

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-3-2003

# Zhu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2817

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Zhu v. Atty Gen USA" (2003). *2003 Decisions.* Paper 150.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/150

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

NO. 02-2817

————

XUI-HUA ZHU,
                              Petitioner

v.

US ATTORNEY GENERAL

————

Petition for Review of an Order
of the Board of Immigration Appeals
(A70-842-340)

————

Submitted Under Third Circuit LAR 34.1(a)
October 14, 2003

Before:  SLOVITER, ROTH, and CHERTOFF, Circuit Judges

(Filed November 3, 2003)

————

OPINION OF THE COURT

SLOVITER, <u>Circuit</u> <u>Judge</u>.

Petitioner Xui-Hua Zhu has filed a petition for review of the order of the Board of Immigration Appeals ("BIA") affirming, without a separate opinion, the decision of an immigration judge ("IJ") that denied Zhu asylum and withholding of removal and re-entered a prior order of exclusion. The IJ based his decision on an adverse finding of credibility. For the reasons that follow, we will deny the petition for review.

## I.

## BACKGROUND

Zhu is a citizen and national of the People's Republic of China. In 1978, Zhu married, and in 1979 his wife gave birth to the couple's first child, a daughter. In 1981, Zhu's wife became pregnant again. Zhu testified that after the local family-planning cadre discovered this second pregnancy, it required Zhu's wife to have an abortion. To avoid this outcome, Zhu and his wife went into hiding at his mother-in-law's home until a few day before delivery, when they returned home under the belief that an abortion would be impossible at that stage. Zhu's wife subsequently gave birth to the couple's second child, a son.

Zhu testified that a few days after the birth of the couple's second child, the family-planning cadre visited the couple again. They demanded that Zhu's wife insert an intrauterine device ("IUD") to avoid future pregnancies. It is at this point that the facts regarding the couple's subsequent actions become a bit unclear. Zhu stated in his 1993

2

asylum application that his wife did not receive an IUD because she was too weak to undergo the procedure, because it was legal for those residing in the countryside to have a maximum of two children, and because he promised not to have any more children in the future. He again testified to these facts during direct examination by counsel in the hearing before the IJ. During cross examination, however, Zhu testified that his wife did insert an IUD in 1981, after the second child's birth. Zhu's testimony is also unclear as to whether Zhu's wife lost the IUD by accident roughly a year later, or had the IUD purposely removed by a private doctor in 1984.

In any event, Zhu and his wife had another child, a second son, on November 29, 1984. In his asylum application, Zhu stated that the pregnancy was "accidental." App. at 10, 78. He testified, however, in front of the IJ that rumors of a new policy subjecting those with two children to forced sterilization motivated the couple, who desired a second son, to attempt to beget another child. He also stated that on December 3, 1984, the family-planning cadre visited the couple once again to notify Zhu's wife that she was to be sterilized a few days later, and on December 6, 1984, cadre members forcibly "dragged" Zhu's wife away for sterilization. App. at 35-39. Three years later, Zhu was fined by the government for having too many children.

After paying the government penalty, Zhu left China and entered the United States via Thailand and Mexico in 1993. He subsequently sought relief from exclusion and deportation, and filed an application for asylum based on his wife's alleged forced

3

sterilization. In 1994, an IJ denied Zhu's application for asylum and withholding of deportation, but the order was never carried out. Zhu then filed a motion to reopen immigration proceedings based upon amendments to 8 U.S.C. § 1101(a)(42) and the BIA's decision in Matter of C-Y-Z, 21 I. & N. Dec. 915 (BIA 1997), which expanded the definition of "refugee" to include individuals having undergone forced sterilization as well as their spouses. Zhu's daughter has since arrived in the United States. His wife and sons remain in China.

## II.

### JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction to review the IJ's decision under 8 C.F.R. § 1003.1(b). We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). When the BIA affirms without opinion the IJ's decision, such approval constitutes the final agency determination, see 8 C.F.R. § 3.1(a)(7)(iii), and the IJ's decision becomes the proper subject of judicial review. Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002); 64 Fed. Reg. 56,135, 56,137 (Oct. 18, 1999).

An alien otherwise removable may remain in the United States through a grant of asylum under § 1158(b)(1) of the Immigration and Nationality Act ("INA") if the alien is determined to be a refugee. The alien may demonstrate his or her refugee status by showing that s/he suffered, inter alia, past persecution on account of one of the statutory bases. Lukwago v. Ashcroft, 329 F.3d 157, 167 (3d Cir. 2003); see 8 U.S.C. §

4

1101(a)(42)(A), 1158(b)(1). The IJ notes that under the expanded definition of a refugee, an individual who has been forced to undergo an abortion or involuntary sterilization is considered to have been persecuted based upon political opinion. App. at 7. Whether an asylum applicant has demonstrated past persecution is a factual determination reviewed under the substantial evidence standard. Gao, 299 F.3d at 272. We will uphold the BIA's findings of fact to the extent they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Balasubramanrim v. I.N.S., 143 F.3d 157, 161 (3d Cir. 1998) (quotation and citation omitted). Likewise, adverse credibility determinations are reviewed for substantial evidence. Id. The BIA's adverse credibility determination must be upheld on review unless any reasonable adjudicator would be compelled to conclude to the contrary. Gao, 299 F.3d at 272 (quotation omitted). On the other hand, adverse credibility determinations based on speculation or conjecture, rather than on evidence in the record, will not be upheld. Id.

## III.

## DISCUSSION

In this case, there was reasonable, substantial, and probative evidence in the administrative record to support the IJ's adverse credibility finding. Zhu argues that the IJ's finding of inconsistencies between Zhu's written asylum application and his in-court testimony are not substantiated by the hearing records. However, there are significant discrepancies between Zhu's application and in-court testimony, and even within the

5

testimony itself, regarding the nature of the third pregnancy by Zhu's wife and the circumstances surrounding the insertion and removal of the IUD. It may be true that removing the IUD did not guarantee, as Zhu argues, a new pregnancy for the couple. But Zhu's admission that he and his wife removed the IUD after hearing that China's sterilization policy would be enforced in the countryside supports the IJ's conclusion that the couple intended, indeed desired, a third child. It is unlikely that the third pregnancy was "accidental" in the sense that it was unintended by Zhu and his wife.

Zhu also argues that the IJ improperly relied on an overseas investigative report prepared by the Immigration and Naturalization Services ("INS") in Guangzhou, China in assessing Zhu's credibility. Zhu alleges several factual inconsistencies and questions the general credibility and diligence of the INS investigation. But Zhu has provided no evidence to support his challenge. Given other inconsistencies between Zhu's asylum application and in-court testimony, the IJ properly relied on the INS investigative report in his general credibility assessment.

Finally, Zhu argues that the IJ improperly speculated that Zhu's wife may have voluntarily undergone the sterilization procedure in this case. We agree that the record provides no basis for such an assertion. However, the IJ readily conceded in his opinion the speculative nature of this idea, and it is not a critical component of the IJ's larger credibility assessment; even without the speculation, there is ample evidence to support the IJ's adverse credibility determination.

For the reasons set out above, we will deny the petition for review.

_____

TO THE CLERK:

Please file the foregoing opinion.


/s/   Dolores K. Sloviter
Circuit Judge